[This opinion has been published in *Ohio Official Reports* at 84 Ohio St.3d 85.]

CINCINNATI BAR ASSOCIATION *v.* DEARDORFF.

CINCINNATI BAR ASSOCIATION V. HAAS.

[Cite as *Cincinnati Bar Assn. v. Deardorff*, 1998-Ohio-311.]

*Attorneys at law—Misconduct—One-year suspension with six months stayed and two-year suspension with one year stayed—Engaging in conduct involving moral turpitude—Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—Engaging in conduct prejudicial to the administration of justice—Participating in the creation or preservation of evidence known to be false.*

(Nos. 98-377 and 98-378—Submitted June 24, 1998—Decided November 25, 1998.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 96-74.

————————————

{¶ 1} On October 15, 1996, relator, Cincinnati Bar Association, filed a complaint charging that respondents, Timothy J. Deardorff of Cincinnati, Ohio, Attorney Registration No. 0006308, and Loren S. Haas of Cincinnati, Ohio, Attorney Registration No. 0001848, violated several Disciplinary Rules. After respondents filed their answers, the matter was heard by a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board").

{¶ 2} The panel received testimony that respondent Haas, who had previously represented Arnold Wilson in a criminal matter, was retained by Wilson in May 1995 to defend him with respect to a domestic violence charge filed by his wife, Nori St. Paul. On May 3, 1995, after St. Paul accused Wilson of molesting her daughter, Wilson, who was working on a crossword puzzle on a lap board, told St. Paul to leave their bedroom. He testified that he then threw the board aside,

flipping it into the air, but not at St. Paul. St. Paul testified that the board struck her on the hip. St. Paul alleged that when she still refused to leave, Wilson pushed her out of the room and into a wall, causing her to fall, and that during the fall Wilson's hand struck St. Paul's mouth, causing her lip to bleed. Wilson claimed that he "took [St. Paul's] arm and then she grabbed me * * * by both arms." St. Paul called the police, who not only arrested Wilson, but also took St. Paul to the police station. At the station, St. Paul voluntarily signed an affidavit prepared by a police officer with respect to the event. St. Paul later said that she was not coerced into filing the affidavit and that at no time did she want to withdraw it.

{¶ 3} However, Haas testified that on May 9, 1995, St. Paul told her that she had filed a false affidavit and wanted to drop the charges against Wilson, but was afraid of the police, who had threatened to arrest her if she did. Wilson hired Haas as his attorney.

{¶ 4} On May 15, 1995, Wilson and St. Paul, who were again living together, met with Haas. At that time, according to Wilson and Haas, St. Paul said that the altercation was her fault and that she had been drinking. According to Haas, St. Paul again said that she had filed a false affidavit and expressed her fear of the police. On May 17, 1995, St. Paul recorded a telephone conversation with Haas, in which Haas asked for a $2,000 retainer to represent Wilson and said that her law firm would be making a campaign contribution to the judge assigned to Wilson's case. Haas said that in the near future she would talk to the judge regarding his policy on domestic violence cases. Under the impression that Haas would use part of the retainer to attempt to bribe the judge assigned to the case, St. Paul wrote a check to Haas for $2,000 for Wilson's legal fees and immediately withdrew the funds from her bank account so that the check would not clear. Haas testified that the $2,000 was going to be used solely for legal fees. On May 18, 1995, Haas wrote a check to the judge's campaign fund for $125.

{¶ 5} On May 19, 1995, St. Paul recorded a telephone conversation with Haas, in which St. Paul told Haas that she feared that the charges against Wilson would not be dropped. She said that she did not know what to say in order to accomplish that. Haas said that she would set up an appointment with her partner, respondent Deardorff, to discuss the best possible way of getting the charges against Wilson dropped and protecting St. Paul. They also discussed that one or both of the respondents would be attending a fundraising event for the judge who was assigned to the case, had "left the money," and would talk to the judge. Because of St. Paul's belief that Haas's language suggested that the lawyers intended to bribe the judge, she contacted the prosecutor's office.

{¶ 6} On May 23, 1995, carrying a concealed tape recorder furnished by the police, St. Paul went to the offices of Haas and Deardorff, not to obtain their help, but for the sole purpose of obtaining admissions to use against Haas. St. Paul believed that Haas had harmed her emotionally on previous occasions.

{¶ 7} Haas characterized the May 23, 1995 meeting, which was the first and only time Deardorff encountered St. Paul, as a brainstorming session at which Haas and Deardorff considered different options for handling St. Paul's false affidavit and her claim that she wanted to drop the charges against Wilson. One option discussed was securing a dismissal by having St. Paul invoke the Fifth Amendment when called as a witness. Another option suggested by Haas was that St. Paul leave the jurisdiction for a month. Deardorff asked whether St. Paul might say that she started the fight and Wilson was defending himself. Because of her previous conversation with St. Paul, Haas suggested that St. Paul could say that she had been drinking. After St. Paul asked whether she could say that she pushed Wilson first, Deardorff inquired as to whether she was coerced into filing the affidavit against Wilson. St. Paul volunteered that on the trip to the police station she was in the back seat of a police car, felt like a convict, and was being told that she would be

arrested if she tried to drop the charges against Wilson. She later testified that this statement was not entirely truthful.

**{¶ 8}** However, based on the statement, the attorneys explored the circumstances under which St. Paul signed the affidavit, whether she had a change of heart before she signed the affidavit, and whether there was case law on the subject of coerced affidavits.

**{¶ 9}** Deardorff then questioned whether the law firm had a problem in representing both the defendant and a complaining witness who did not wish to testify. The attorneys concluded that they could undertake such representation, since the opposing parties in the criminal action were not St. Paul and Wilson, but the state of Ohio and Wilson. They determined that they could do so if both Wilson and St. Paul waived any potential conflict.

**{¶ 10}** About two-thirds of the meeting had transpired when the respondent attorneys indicated that they had settled on the motion to dismiss as the best approach. When St. Paul asked, "What if I went in and like you said, I said Well, you know I pushed him and this that and the other," Deardorff replied, "Well, but you don't have to do that if the motion is dismissed." When St. Paul asked again about testifying with respect to the affidavit, Deardorff indicated that the motion was the only approach presently under consideration, saying, "if we lose our motion, Lorie and I want some time to think about our next move." To which Haas replied, "Right. Right." Later, Deardorff again told St. Paul that she did not have to testify about the real case on the motion to dismiss, only about her change of heart on the way to the police station. St. Paul then mused, "if it doesn't get dismissed or something," and Deardorff replied, "Then we got the trial and that's next. What we can do then—" and Haas interjected, "Then that's next. But we're going to do one step at a time. We'll deal with that later."

**{¶ 11}** When St. Paul again asked whether the lawyers were confident that the case would be dismissed, Deardorff said, "If you go to trial, it's pretty clear you

4

are going to have to testify, if you don't * * * take the Fifth." Deardorff told St. Paul that if the case went to trial and she was granted immunity, she could "tell them Santa Claus was there * * * you can lie through your teeth." After some further discussion, Haas said, "We don't want you to lie, we're just making up— we're just cracking jokes." However, Haas then said, "If they grant you immunity, then we want you to tell the rest of the story, which we will say is that you started— you got physical with him first and you were pushing him in his face and he was just pushing you off of him." Later in the meeting the respondents again reviewed this scenario with St. Paul.

{¶ 12} At the conclusion of the meeting, St. Paul asked whether it would make any difference to make a "healthier contribution" to the judge's cause. Deardorff replied, "No, you're going to have to make a healthier contribution to our cause," and "No. I wouldn't do that."

{¶ 13} After the meeting the lawyers decided to prepare a motion to dismiss, to be signed by Haas as Wilson's lawyer. And because St. Paul had changed her story several times, the attorneys decided that the motion should be accompanied by an affidavit signed by St. Paul based on what Haas believed was St. Paul's original story. Haas requested an associate in the law firm to prepare the affidavit and the motion. However, St. Paul became hostile to the attorneys, and the draft affidavit was never presented to her. The case was ultimately dismissed.

{¶ 14} On September 26, 1995, both respondents were charged with obstructing justice based on the May 19 telephone call and the May 23 meeting. In January 1996, Haas, who was afraid of the criminal process and going to jail, pled no contest to attempted obstruction of justice, and was fined $750. The charge against Deardorff was dropped.

{¶ 15} The panel concluded that respondents Haas and Deardorff violated DR 1-102(A)(3) (engaging in conduct involving moral turpitude), 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-

102(A)(5) (engaging in conduct prejudicial to the administration of justice), and 7-102(A)(6) (participating in the creation or preservation of evidence when the lawyer knows that the evidence is false). The panel noted in mitigation that Haas was deeply remorseful about her conduct and, as of December 1995, had ceased to practice law. It noted that Deardorff believed that he was unfairly prosecuted and that he did not do anything wrong. The panel heard witnesses testify to Deardorff's excellent reputation for truth, honesty, and ability, and received letters with respect to Haas's good reputation in the legal community. The panel recommended that Deardorff be suspended from the practice of law for one year and that six months of the suspension be stayed. The panel recommended that Haas be suspended from the practice of law for two years and that one year of the suspension be stayed. The panel further recommended that each respondent enroll in six hours of continuing legal education in ethics to be completed by the end of each respondent's suspension period. The board adopted the findings, conclusions, and recommendations of the panel.

_____

*Paul M. De Marco, John G. Slauson* and *Robert J. Hollingsworth,* for relator.

*Mark H. Aultman* and *Gary A. Rosenhoffer*, for respondent Timothy J. Deardorff (No. 98-377).

*John H. Burlew* and *Bradley G. Haas,* for respondent Loren S. Haas (No. 98-378).

_____

*Per Curiam.*

{¶ 16} We adopt the findings of the board. In order to avoid having St. Paul testify falsely, the respondent attorneys had decided to employ the tactic of a motion to dismiss based on what they at the time believed were the desires and fears of St. Paul, and the facts surrounding her affidavit.

**{¶ 17}** However, the attorneys went further. They then proceeded to discuss with St. Paul possible contingent courses of action. Although St. Paul led them into manufacturing a story by continually asking what would happen if the motion to dismiss were denied, the attorneys should not have suggested that St. Paul testify that she was the instigator of the altercation when that approach had no basis in fact. Although one of the respondents told St. Paul that they were not telling her to lie, the respondents did tell her that if granted immunity she could say anything she wished and they produced the story she might tell, if required. We therefore adopt the conclusion of the board that the respondents violated the specific Disciplinary Rules. We also note that the respondents' attempt to represent both the defendant and the principal witness against the defendant was inimical to the administration of justice.

**{¶ 18}** We adopt also the board's recommendation that respondent Deardorff be suspended for one year, with six months of that suspension stayed. Respondent Haas is hereby suspended from the practice of law for two years, with one year of that suspension stayed. Both respondents will also enroll in six hours of continuing legal education in ethics to be completed within the term of each respondent's suspension. Costs taxed to respondents.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

———————————